IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

| | | |
|---|---|---|
| COMBAT ZONE CORP., | § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 2:12-00142-MPM-SAA |
| JOHN/JANE DOES 1-2, | § § | |
| *Defendants.* | § § § | |

**MEMORANDUM IN SUPPORT OF THIRD-PARTY INTERNET SERVICE PROVIDER AT&T'S RESPONSE TO MOTION FOR EXPEDITED DISCOVERY**

Pursuant to the Court's Order of August 28, 2012, third-party Internet service provider SBC Internet Services, Inc. d/b/a AT&T Internet Services ("AT&T") files this memorandum in support of its response to Plaintiff's Motion for Expedited Discovery (the "Expedited Discovery Motion" or "Motion"). Plaintiff filed its Expedited Discovery Motion seeking discovery pursuant to 17 U.S.C. § 512(h) and additional discovery (not pursuant to any stated authority) on August 7, 2012. (Expedited Disc. Mot. at 1, ECF No. 3.) On August 28, 2012, the Court entered its Order inviting a response to the Motion from the Internet service providers ("ISPs") from which Plaintiff seeks expedited discovery – namely, AT&T and MetroCast Cablevision/ MetroCast Communications of Mississippi, LLC. (Order, ECF No. 6.)

AT&T contends that the Expedited Discovery Motion should be denied. Among other things, and directly contrary to the Plaintiff's repeated contentions, it is well-established that subpoenas may <u>not</u> be issued to mere conduits such as Internet service providers pursuant to the 17 U.S.C. § 512(h) subpoena provision of the Digital Millenium Copyright Act ("DMCA"). Plaintiff appears to rely entirely on this inapplicable authority as the basis for the discovery it seeks from the ISPs.

## BACKGROUND

This suit is part of a nationwide flood of copyright infringement actions initiated by plaintiffs who do not appear to have any sincere intention of naming or serving actual defendants, much less to actually litigate the many hundreds of lawsuits that have been filed. *See Media Prods., Inc. v. John Does 1-26*, 2012 WL 3866492 at * 1 n. 2 (S.D.N.Y. Sep. 4, 2012) (providing a "sample" listing of such cases); *Malibu Media, LLC v. John Does 1-10*, 2012 U.S. Dist. LEXIS 89286 at *8-9 (C.D. Cal. Jun. 27, 2012) (describing the "economics of pornography copyright lawsuits" and noting that such cases "rarely" reach the merits).

The federal courts continue to grapple with the challenges posed by these suits, including the extraordinary burden imposed on the federal judicial system as well as the ISPs. In the meantime, the courts have increasingly recognized that these plaintiffs' tactics warrant careful and heightened scrutiny. AT&T appreciates the prudence of this Court's approach in that regard.

Plaintiff's Motion and the Complaint on which it is based, are deficient and problematic.[1] For one thing, Plaintiff has not provided any evidentiary support to support its request for extraordinary, expedited relief, unlike the plaintiffs in virtually all other similar suits. Compounding this deficiency, the Complaint describes the Defendants in a confusing and inconsistent manner.[2] (*See* Compl. at 3 ("Plaintiff knows each Defendant only by the Internet Protocol ('IP') address assigned to the account used by each Defendant through each Defendant account holder's [ISP] on the date and at the time at which the infringing activity of each

---

[1] Putting aside the inapplicability of the authority relied upon by the Plaintiff, this case is admittedly not as egregious as the "mass defendant" suits that are sometimes filed. At present, the Plaintiff has only included two "Doe" defendants in the caption, and Plaintiff alleges that they both reside within this District. (Compl. at 1, 3 & Ex. 2.)

[2] Of course, and as federal courts have repeatedly recognized, the Internet subscriber may not be actual user of an Internet account at any given point in time. *E.g. In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765 (E.D.N.Y. May 1, 2012) (stating: "it is no more likely that the subscriber to an IP address carried out a particular computer function – here the purported illegal downloading of a single pornographic film – than to say an individual who pays the telephone bill made a specific telephone call.").

2

Defendant was observed."), 6 ("Each IP address identifies an uploading user who is currently running BitTorrent client on his or her computer and who is currently offering the desired motion picture for download.").) And the Doe Defendants (whoever they are) may not be properly joined in this proceeding under the trend of the pertinent authorities, which disfavor joinder based on the mere allegation that the alleged infringers allegedly participated in the same BitTorrent "swarm."[3] *E.g., Media Prods., Inc.*, 2012 WL 3866492 at * 2 (severing all but one Doe defendant in each of several cases, in part in recognition of the judicial inefficiencies encountered when a proceeding is maintained against many Doe defendants in a single action).

Even if Plaintiff's Complaint were to pass basic muster, the relief sought in the Motion exceeds what might actually be available to Plaintiff under Rule 45 of the Federal Rules of Civil Procedure. That Rule does not, for example, provide for the injunctive-type relief that the Plaintiff seeks, including requirements that the ISPs should send notices to their customers within specified periods of time.[4]

Further, AT&T is not aware of any authority that would support the Plaintiff's request for multi-stage preliminary discovery directed to the Internet subscribers that it would have the ISPs identify, and Plaintiff does not provide any such authority. Absent any evidentiary showing or legal authority, Plaintiff is not entitled to an extraordinary, advance order from this Court for at least two stages of discovery (from the ISPs, then from their customers) before this case even begins.

---

[3] The Complaint also posits that the defendants are "agent[s] of [each] other," (Compl. at 4) but AT&T is not aware of any factual or legal grounds for such an assertion, and Plaintiff does not provide any.

[4] AT&T also does not agree that Plaintiff is entitled to an order that the ISPs should preserve data in this lawsuit. While AT&T does not suggest that it is exempt from any applicable legal obligations to preserve data, AT&T is not a party to this lawsuit and accordingly, as discussed below, AT&T is not aware of any authority for the issuance of injunctive-type relief against it herein.

3

# ARGUMENT

### A. Subpoenas may not be issued under 17 U.S.C. § 512(h) to ISPs acting as conduits for file sharing between Internet users.

In the Expedited Discovery Motion, Plaintiff "seeks a Court order allowing it to propound discovery in the form of subpoenas pursuant to 17 U.S.C. § 512(h)." (Expedited Disc. Mot. at 1.) Although Section 512(h) provides for the issuance of subpoenas for the purpose of identifying alleged copyright infringers, it has been established that such subpoenas may not be issued to ISPs who are acting as conduits for the sharing of data between Internet users – as here, where content has allegedly been transferred via a peer-to-peer protocol over the Internet. *In re Charter Commc'ns, Inc.*, 393 F.3d 771, 777-78 (8th Cir. 2005) (finding that Section 512(h) does not authorize the issuance of subpoenas to ISPs acting as mere conduits for communications between Internet users, and vacating order issued by district court enforcing improperly issued Section 512(h) subpoenas); *Recording Indus. Assoc. of Am. v. Verizon Internet Svcs., Inc.*, 351 F.3d 1229, 1236-39 (D.C. Cir. 2003) (Section 512(h) inapplicable where Internet service provider acted as conduit for alleged peer-to-peer file sharing between Internet users).[5]

As the pertinent authorities have observed, a plaintiff seeking to issue a Section 512(h) subpoena to an ISP cannot meet at least one of the essential statutory requirements under the DMCA. Specifically, any request for the issuance of a subpoena under Section 512(h) must include a copy of a "notification of claimed infringement" that must have been sent to the service provider, which notification must include: "Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate

---

[5] For clarity, ISPs such as AT&T are eligible for immunities set forth under other provisions of the DMCA. *E.g.*, 17 U.S.C. § 512(a). However, as discussed herein, the notice-and-takedown provisions of Section 512(c) do not apply to a conduit service provider, and thus a Section 512(h) subpoena may not be issued to such a service provider.

4

the material." 17 U.S.C. § 512(c)(3)(A), (h)(2)(A) (requiring "a copy of a notification described in subsection (c)(3)(A)" as a prerequisite to the issuance of a subpoena under Section 512(h)). This requirement plainly contemplates a situation where accused material is stored by a service provider in such a way that a copyright holder may notify such service provider of the accused infringing material and the location of that material, and the service provider may then remove the accused material or block access to the accused material. 17 U.S.C. § 512(c), (h). Such a notification-and-takedown process is inapplicable as to a conduit service provider, in that such service provider could never "locate" an file that has been allegedly shared, piecemeal, between several or many hundreds of file sharing individuals. The allegedly infringing material, if it exists, would exist on the hard drives of the alleged infringers, not on the systems of any ISP. *See In re Charter Commc'ns*, 393 F.3d at 771; *Verizon Internet Svcs.*, 351 F.3d at 1235-37 (ultimately agreeing with argument that "No matter what information the copyright owner may provide, the ISP can neither 'remove' nor 'disable access to' the infringing material because that material is not stored on the ISP's servers." and stating "any notice to an ISP concerning its activity as a mere conduit does not satisfy the condition of § 512(c)(3)(A)(iii) and is therefore ineffective").

Plaintiff has attempted to demonstrate compliance with the requirements of Section 512(h), by submitting a proposed subpoena (Expedited Disc. Mot., Ex. 2, ECF No. 3-2) along with a sworn declaration concerning how information obtained via the proposed subpoena will be used (Expedited Disc. Mot. at 8), each of which is required by the statute. 17 U.S.C. § 512(h)(2)(B), (C). Conspicuously absent from Plaintiff's filing, though, is the requisite notification, which has not and cannot be provided, as discussed and confirmed in the caselaw

cited above. Plaintiff's request for an order permitting the issuance of subpoenas under Section 512(h) of the DMCA should be denied.

    **B.**    **At most, Plaintiff may only request relief from third-party ISPs in the form of permission to issue subpoenas under Rule 45 of the Federal Rules of Civil Procedure, and that Rule neither contemplates nor permits the issuance of a mandatory injunction to a third party.**

Typically, plaintiffs in similar cases seek expedited discovery by alleging that they can demonstrate "good cause" for such discovery under Rule 26 of the Federal Rules of Civil Procedure. If granted, such a request might permit the plaintiff to issue subpoenas to third parties pursuant to Rule 45.

Rule 45 of the Federal Rules of Civil Procedure sets forth the appropriate mechanisms by which discovery may be sought from a nonparty via a federal court's subpoena power. Included within Rule 45 are a number of procedural protections, such as an obligation on the part of a party seeking such discovery to avoid the imposition of an undue burden, the opportunity to object, and the protection against the imposition of "significant" costs upon a nonparty. FED. R. CIV. P. 45(c)(1), c(2)(B)(ii).[6] Such procedural protections arise from a recognition that non-litigants should not be significantly burdened in connection with litigation in which they have no interest. *See, e.g., DigiProtect USA Corp. v. Does 1-240*, 2011 WL 4444666 at *4 (S.D.N.Y. Sep. 26, 2011) (stating "Courts are especially sensitive to the burdens placed on nonparties").

The relief sought by the Plaintiff here, however, exceeds permission to issue expedited subpoenas to third parties that would be governed by Rule 45.[7] In particular, Plaintiff requests

---

[6] Rule 45 also provides detailed procedures whereby the subpoenaed person and any other affected persons may assert their rights and any objections. Fed. R. Civ. P. 45 (c)(2)(B), (c)(3).

[7] This overreaching is typical of plaintiffs in similar cases, who typically present proposed orders with various extraneous requirements to the courts *ex parte*. The aggregate impact of such orders, when granted, is particularly burdensome on ISPs, given that hundreds of different cases are involved and the extraneous provisions add a confusing layer of potential requirements that are inconsistent, vary from court to court and plaintiff to plaintiff, and

6

that the ISPs be ordered to send notifications of subpoenas to their subscribers, and to do so within a particular time period.[8] (Expedited Disc. Mot. at 7.) Plaintiff also asks the Court to order the ISPs to notify their subscribers that they have a certain period of time to file motions contesting the subpoenas.[9] (*Id.*) Such requested relief is in the nature of a preliminary injunction, which would be governed by Rule 65 of the Federal Rules of Civil Procedure – inappropriate here because the requirements and protections of that Rule have not and cannot be met by the Plaintiff as to the third-party ISPs.[10] Never mind that Plaintiff has provided no evidence whatsoever to support its allegations, even as it seeks such extraordinary, affirmative relief.

Taking the above into account, any relief granted to Plaintiff in connection with its request for expedited discovery should not include any affirmative obligations on AT&T. If Plaintiff is permitted to issue subpoenas to AT&T on an expedited basis, the issuance of such subpoenas, and AT&T's and other affected persons' rights to object and seek recovery of costs, should be as set forth in Rule 45.

---

may even be impossible to follow after taking into account the competing demands of other civil litigants and law enforcement.

[8] AT&T does typically notify its subscribers and give them an opportunity to object to the disclosure of their personally identifiable information, and AT&T typically objects to subpoenas to the extent it does not have a reasonable period of time to do so. However, AT&T is not aware of any legal authority for the entry of an order requiring it to send communications to its subscribers in connection with a lawsuit to which AT&T is not a party. In addition, AT&T does not agree or concede that it is a "cable provider" under the Cable Privacy Act, 47 U.S.C. § 551, despite Plaintiff's summary pronouncement on pages 6-7 of its Motion.

[9] Rule 45 addresses any such deadlines. Again, AT&T would likely assert an objection, as permitted under Rule 45, if the return date of the subpoena was inadequate for the timely assertion of rights pursuant to the Rule.

[10] Under Rule 65, such an injunction may only issue against: the parties; the parties officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with any of the parties, the parties officers, agents, servants, employees, and attorneys. FED. R. CIV. P. 65(d)(2). Thus, the ISPs are not persons as to whom an injunction may appropriately issue under Rule 65. In addition, no security to pay the "costs and damages sustained by any party found to have been wrongfully enjoined or restrained" has been required of Plaintiff, and therefore no preliminary injunction may properly issue, even if the ISPs could theoretically be properly subject to such an order. FED. R. CIV. P. 65(c).

C. **This suit and others like it warrant additional cautionary measures and heightened scrutiny.**

This lawsuit is similar to hundreds of other copyright infringement cases brought across the country by attorneys representing owners of pornographic content. The cases follow what judges have called a "common arc:"

> (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle....

*MCGIP, LLC v. Does 1-149*, 2011 U.S. Dist. LEXIS 108109, at *11 n.5 (N.D. Cal. Sept. 16, 2011); *see also In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765 at *10 (noting that unfair litigation tactics similar to those described above "may be the principal purpose of these actions, and . . . distinguish these plaintiffs from other copyright holders."). Expressing concern about these practices, one judge stated:

> [T]he court shares the concern that these cases potentially open the door to abusive settlement tactics. . . . Nothing currently prevents Plaintiff from sending a settlement demand to the individual that the ISP identifies as the IP subscriber. That individual – whether guilty of copyright infringement or not – would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust "settlement."

*Hard Drive Prods. v. Does*, 2011 U.S. Dist. LEXIS 132449, at *9 (N.D. Cal. Nov. 16, 2011).

Another court compared such plaintiffs to "locusts . . . descend[ing] on the federal courts, exacting low-cost settlements from embarrassed John Does and then moving on to the next District."[11] *Media Prods., Inc.*, 2012 WL 3866492 at *1. Ultimately, what these plaintiff

---

[11] One court even used the term "extortion" in discussing the practices of plaintiffs in these cases. *Malibu Media, LLC*, 2012 U.S. Dist. LEXIS 89286 at *5-9. Like other courts, the court in *Malibu Media* described the rarity with which plaintiffs in such cases actually litigate their claims, apparently seeking instead to simply use court-sanctioned identification discovery to effectuate their "copyright-enforcement business model." *See id.*

8

typically seek is not "discovery" at all – rather, the plaintiffs are pursuing a shopping list of names and contact information for use in order to coerce settlement.[12] The Fifth Circuit Court of Appeals recently referred to such litigation tactics as a "strategy of suing anonymous internet users for allegedly downloading pornography illegally, using the powers of the court to find their identity, then shaming or intimidating them into settling for thousands of dollars—a tactic . . . that has been replicated by others across the country." *Mick Haig Prods., e.K. v. Does 1-670*, 687 F.3d 649, 652 (5th Cir. 2012).

In recognition of these potential abuses, as well as the burdens imposed by these cases on the federal courts themselves, federal courts are increasingly wary of these suits and the tactics of plaintiffs' counsel. *See Media Prods., Inc.*, 2012 WL 3866492 at *1-2 & n. 2 (stating "It is difficult to imagine the extraordinary amount of time federal judges have spent on these cases"; and severing and dismissing numerous Doe defendants from several pending cases). For example, courts have ordered plaintiffs to show cause why Rule 11 had not been violated,[13] required a review of subpoenas sought to be issued,[14] analyzed demand letters sent by such plaintiffs to unnamed defendants,[15] required the plaintiff to address whether its own investigator

---

[12] *See, e.g., K-Beech, Inc. v. Does*, 2011 U.S. Dist. LEXIS 124581, at *7 (E.D. Va. Oct. 5, 2011) (explaining the court's concern that "plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them.").

[13] *Raw Films v. Does 1-32*, 2011 WL 6182025 at *2-3 (E.D. Va. Oct. 5, 2011) ("According to some of the defendants, the plaintiffs [] contacted the John Does, alerting them to this lawsuit and their potential liability. Some defendants have indicated that the plaintiff has contacted them directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation. When any of the defendants have filed a motion to dismiss or sever themselves from the litigation, however, the plaintiffs have immediately voluntarily dismissed them as parties to prevent the defendants from bringing their motions before the Court for resolution.").

[14] Order Denying Pl.'s Renewed Mot. for Leave to Take Early Disc. at 3-4, *AF Holdings LLC v. John Doe*, No. 12-cv-22157 (S.D. Fla. Sep. 17, 2012), ECF No. 10 (finding that the "[p]laintiff's insistence on issuing a subpoena from the District of Columbia, a judicial forum that has no connection with this lawsuit, appears to be a litigation tactic rather than a necessity" and denying the plaintiff's motion for expedited discovery with respect to the issuance of such subpoenas from the District of Columbia).

15 *Millennium TGA v. Comcast Cable Comm'cns*, --- F.R.D. ---, 2012 WL 2371426 at *7 (D.D.C. Jun. 25, 2012) (analyzing letters sent by plaintiffs' counsel in other cases and noting the monetary demands, instructions concerning preservation of data, and warnings of potential sanctions contained in such letter; stating "Given the

had participated in the alleged infringement,[16] and, in some situations, awarded sanctions or referred the matter to the state bar.[17]

Such measures are appropriate. The courts are not "cogs in plaintiff's copyright-enforcement business model" *Malibu Media*, 2012 U.S. Dist. LEXIS 89286 at *9, and the invocation of the authority of the courts should not be abused. If a plaintiff is going to be permitted to use the courts to identify then contact individual Internet subscribers in an effort to obtain quick settlements of copyright infringement claims, the plaintiff might be required to: (i) first present sound, objective evidence in support of its claims; (ii) utilize only settlement demand letters that fairly present plaintiff's claims and that have been approved in advance by the court; (iii) refrain from seeking to coerce settlements from Internet subscribers that are hotels, inns, or other public or commercial establishments, or any other Internet subscribers whose circumstances indicate that they were not the user of the Internet account in connection with the alleged infringement at issue; (iv) make a showing of the actual damages that have allegedly been incurred, and the plaintiff's entitlement, if any, to recovery of statutory damages and attorneys' fees; and/or (v) certify that the plaintiff did not seed (introduce) or cause the seeding of the work in the Bittorrent stream or any other unauthorized distribution channel.

In this case, Plaintiff's briefing to the Court and requests for relief demonstrate the abuses that can accompany the typically *ex parte* nature of these proceedings. In particular: (i) Plaintiff

---

intimidating tactics and oppressive demands made by Plaintiff's counsel in other cases, it is particularly appropriate to require the Plaintiff to proceed according to the federal rules and only allow discovery related to valid claims that can and actually will be prosecuted in the federal court where the claims have been filed.").

[16] *See* Notice at 1, *XPays, Inc. v. Does 1-34*, No. 12-cv-0928 (S.D. Ill. Sep. 4, 2012), ECF No. 12. (per request of the court, addressing topic of: "Did plaintiff's investigator upload the film to any of the Does in this action?")

[17] Order Denying Mot. to Strike Notice of Noncompliance, Referring Pl.'s Counsel to the Florida Bar and the Ad Hoc Committee on Attorney Admissions, Peer Review, and Attorney Grievance, and Denying Mot. to Stay and Reconsider the Court's Aug. 2, 2012 Order, *Bubble Gum Prods., LLC v. Does 1-80*, No 12-cv-20367, (S.D. Fla. Sep. 10, 2012), ECF No. 50; *Mick Haig Prods., e.K., v. Does*, 2011 WL 5104095 at *3-7 (N.D. Tex. Sep. 9, 2011) (imposing monetary sanctions, a requirement that the sanctions order be filed in every action in which plaintiff's counsel was then participating, and attorneys' fees), *aff'd*, 687 F.3d 649 (5th Cir. 2012); *see also Patrick Collins, Inc. v. Does 1-25*, 2012 WL 27586 at *2-3 (S.D. Fla. Jan. 4, 2012).

seeks to have this Court order that Plaintiff should be entitled to issue a subpoena under an inapplicable statutory provision; (ii) Plaintiff has provided the Court with a declaration that relates to the inapplicable statutory provision, yet Plaintiff has provided no evidence whatsoever to support its allegations of copyright infringement by the Internet subscribers; (iii) Plaintiff contends without legal authority or explanation that two unknown Internet users are "agents" of each other; (iv) Plaintiff alleges that it may seek to join "additional infringing parties" as defendants in this lawsuit; (v) Plaintiff sometimes suggests that the Defendants are the Internet subscribers to be identified, and sometimes asserts that the Defendants are not necessarily such persons, and may be someone else; and (vi) Plaintiff suggests that it is entitled to the greater of "statutory damages in the amount of $150,000 per Defendant," or "statutory damages in the amount of $30,000 from Defendants, jointly and severally," and attorneys' fees in connection with the alleged peer-to-peer infringement of a pornographic work entitled "Mommy and Me #2." Already, Plaintiff's tactics in connection with this lawsuit are more than mildly questionable.

### D. Courts increasingly disapprove of the joinder of more than a single defendant in these suits.

In addition to the above-described points of scrutiny, the trend of the federal courts is to disapprove of the joinder of more than a single defendant in these cases. Many courts do not agree that the mere inclusion of two defendants in a single BitTorrent "swarm" is sufficient for joinder purposes. As one court put it, "If [plaintiff] desires to vindicate its copyright rights, it must do it the old-fashioned way and earn it". *Malibu Media, LLC,* 2012 U.S. Dist. LEXIS 89286 at *5-9 (allowing the plaintiff to seek expedited discovery as to only one Doe defendant); *see also, e.g., Bubble Gum Prods., LLC v. Does 1-80,* 2012 WL 2953309 at *5, n. 9 (S.D. Fla. Jul. 19, 2012) (noting the inefficiencies that would likely be created by forcing numerous Doe defendants to litigate in a single suit; and holding that the plaintiff's allegation that the Doe

defendants downloaded pieces of the same file did "not satisfy the 'same transaction, occurrence, or series of transactions or occurrences' requirement for permissive joinder"); *Cinetel Films, Inc. v. Does 1-1,052*, 2012 WL 1142272 (D. Md. Apr. 4, 2012) (dismissing all Does but one for improper joinder); *Hard Drive Prods., Inc. v. Does 1-90*, 2012 WL 1094653 (N.D. Cal. March 30, 2012) ("Plaintiff has not shown that the defendants acted in concert simply by appearing the same swarm at completely different times"); *AF Holdings LLC v. Does 1-135*, 2012 WL 1038671 (N.D. Cal. Mar. 27, 2012) (dismissing lawsuit for failing to serve any defendants); *Patrick Collins, Inc. v. John Does 1-23*, 2012 WL 1019034 at *3 (E.D. Mich. Mar. 26, 2012) (stating that "simply alleging the use of BitTorrent technology…does not comport with the requirements under Rule 20(a) for permissive joinder," and dismissing Does 2-23 for improper joinder); *K-Beech, Inc. v. John Does 1-41*, 2012 WL 773683 (S.D. Tex. Mar. 8, 2012) (dismissing all Does but one because plaintiff's copyright concerns "do[] not justify perverting the joinder rules"); *Raw Films, Inc. v. Does 1-32*, 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) (dismissing claims against 29 of 32 Does for improper joinder, and noting that earlier grant of plaintiff's motion for discovery was done "before appreciating the manageability problems posed by joinder of unrelated defendants"); Order, *Patrick Collins, Inc. v. John Does 1-35*, No. 11-cv-1728 (N.D. Ohio Dec. 5, 2011), ECF No. 13 (striking complaint as to all but one Doe defendant due to impermissible joinder); Order, *K-Beech, Inc. v. John Does 1-63*, 11-cv-2941 (N.D. Ga. Dec. 5, 2011) ECF No. 14 ("The differing dates and times of each defendant's alleged sharing do not allow for an inference that they were acting in concert."); *Hard Drive Productions, Inc. v. Does 1-30*, 2011 WL 4915551 (E.D. Va. Oct. 17, 2011) (after initially granting plaintiff's request to take discovery, finding "upon due consideration" that Does 2-30 are improperly joined); *On the Cheap, LLC v. Does 1-5011*, 2011 WL 4018258 (N.D. Cal. Sept. 6, 2011) (dismissing Does 1-16 and 18-5,011, after originally granting plaintiff's *ex parte* order, based on multiple concerns arising during the case); *and AF Holdings LLC v. Does 1-97*, 2011 WL 2912909 (N.D. Cal. July 20, 2011) (denying discovery of Does 2-97 due to improper joinder).

12

Here, Plaintiff's unsupported assertions that the unnamed defendants comprise the "swarm" of "at least two individuals acting in concert with each other" and were acting as "agent[s]" of one another (Compl. at 3-5) are undercut by the fact that, according to Plaintiff, the defendants allegedly downloaded "Mommy and Me #2" more than three weeks apart from each other. (Compl. Ex. 2, ECF No. 1 (alleging that one defendant's infringing activity took place on May 17, 2012 and the other's took place on June 9, 2012).) Courts have repeatedly declined to permit joinder of multiple defendants under such circumstances. *See* authorities cited *supra*; Fed. R. Civ. P. 20. (permissive joinder).[18]

### E. Plaintiff's request for multi-stage early discovery should be denied.

In addition to seeking leave to engage in expedited discovery by serving subpoenas on third-party ISPs, Plaintiff also requests that the Court enter an order permitting Plaintiff to engage in "limited discovery in the form of interrogatories, admissions, and/or deposing the individuals identified by the ISPs in order to determine whether or not the Internet subscriber is the proper Defendant in this action." (Mot. for Expedited Disc. at 7 ("In the interest of judicial economy, Plaintiff requests pre-authorization to conduct this supplemental discovery.").)

Plaintiff provides no legal authority for such an unusual request, and AT&T is unaware of any authority under which Plaintiff may engage in such multi-stage discovery without first naming and serving defendants in the suit. Plaintiff does not even state what "limited" discovery it may seek, or how that discovery would determine the actual user of an Internet account at a

---

[18] Admittedly, the courts are not yet uniform on the joinder issue in these cases. In a recent decision, Judge Beryl Howell of the District for the District of Columbia issued a ruling that disagrees with the positions of the other courts cited herein. *AF Holdings, LLC v. Does 1-1,058*, --- F.Supp.2d ---, 2012 WL 3204917 at *20-23 (D.D.C. Aug. 6, 2012) (finding consideration of joinder and jurisdictional issues "premature" prior to the naming of any defendants and certifying such finding for appeal). Recognizing that such a ruling is contrary to the rulings of other judges in the same District, she also granted the ISPs' request for permission to seek interlocutory review of that decision. *Id.* at *3, 23. A group of ISPs, including AT&T, have filed a petition for such review in the Court of Appeals for the District of Columbia, and such petition is pending. Pet. of Cox Commc'ns, Inc., Verizon Online, LLC, Bright House Networks, LLC, SBC Internet Services, Inc., d/b/a AT&T Internet Services, and Comcast Cable Comm'cns, LLC for Permission to Appeal Pursuant to 28 U.S.C. § 1292(b), *AF Holdings, LLC v. Does 1-1,058*, No. 12-8011 (D.C. Cir. Aug. 16, 2012), Doc. No. 1389849.

given point in time with respect to a particular, alleged activity; nor does Plaintiff state on what terms it might seek to, for example, require a given Internet subscriber to appear and be subject to questioning at a deposition. For sure, the advance right to impose such discovery on an expedited basis could provide additional ammunition for coercing settlement.

At bottom, it appears that Plaintiff actually seeks pre-suit discovery, which would be governed by Rule 27(a) of the Federal Rules of Civil Procedure. However, Rule 27 is for the purpose of perpetuating testimony, and is not properly used as a pre-suit discovery mechanism to identify possible defendants. *In re Ingenuity 13, LLC*, 11–mc–0084, 2012 WL 968080 at *5-6 (E.D. Cal. Mar. 21, 2012). This lawsuit is not a Rule 27 proceeding. It is an adversarial proceeding governed by procedural rules, checks, and balances for the rights of parties (and, under Rule 45, non-parties). Such provisions include the service of summons (FED. R. CIV. P. 4), an initial conference of the parties (FED. R. CIV. P. 26(f)), and discovery between the parties thereafter (FED. R. CIV. P. 30, 33, 34, and 36). The Rules do not address the issuance of discovery to persons who are (sometimes) referred to as "parties" in advance of the naming, service, and appearance of such persons in the lawsuit.

In seeking to engage in this unusual discovery, Plaintiff suggests that it may, at its election, either serve a nonparty with discovery as if he or she were a party, or name a person as a defendant in this proceeding despite that such person may not be the alleged infringer. (*See* Compl. at 3 ("In most cases, the account holder will be the proper defendant in this case.").) Plaintiff has provided no authority, let alone any proposed guidelines, that would permit such deviation from the federal rules of civil procedure and the proper use of courts to resolve actual cases or controversies.

## CONCLUSION

For the foregoing reasons, AT&T respectfully submits that Plaintiff's Motion for Expedited Discovery should be denied to the extent it seeks authority to issue a subpoena pursuant to Section 512(h) of the DMCA. Furthermore, AT&T submits that the Court should carefully scrutinize Plaintiff's requests to obtain the personally identifiable information as to the Doe Defendants, should consider severing Doe No. 2 on joinder grounds, and should consider the imposition of heightened requirements on Plaintiffs, as other courts have done in similar cases. If discovery should be permitted as to either or both of the Doe Defendants in the form of permission to issue a Rule 45 subpoena, the discovery order should not include any requirements of the ISP other than such requirements as emanate from Rule 45. Absent any legal authority, Plaintiff's request for multi-stage discovery (*i.e.*, for advance authorization to take depositions and/or serve interrogatories and document requests on identified subscribers, on an expedited basis before any defendant is named) should be denied.

Respectfully submitted:

/s/ Mark F. McIntosh
Mark F. McIntosh
Mississippi Bar No. 2646
AT&T Services, Inc.
Suite 05C571
1025 Lenox Park Blvd NE
Atlanta, Georgia 30319
Telephone: (404) 986-1102
Facsimile: (404) 986-1809
mm5000@att.com

Attorney for SBC Internet Services, Inc.
d/b/a AT&T Internet Services

Of counsel:

Bart W. Huffman
Locke Lord LLP
100 Congress Ave., Ste. 300
Austin, Texas 78701
Tel: (512) 305-4746
bhuffman@lockelord.com

## Certificate of Service

I hereby certify that on October 1, 2012, I electronically transmitted the attached document to the Clerks' Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

*Attorney for Plaintiff, Combat Zone Corp.*

Thomas G. Jacks
CHALKER FLORES LLP
2711 LBJ Freeway, Suite 1036
Dallas, TX 75234
214-866-0001
Email: tjacks@chalkerflores.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

*Attorney for Defendants, John/Jane Does 1-2*

Paul A. Chiniche
CHINICHE LAW FIRM, PLLC
1109 Van Buren Avenue
P.O. Box 1202
Oxford, MS 38655
662-234-4319
Email: pc@chinichelawfirm.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED


_____/s/ Mark F. McIntosh_____
Mark F. McIntosh